# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KELLY STAPLETON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16-cv-00889 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| UNION PACIFIC RAILROAD COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kelly Stapleton claims that Defendant Union Pacific Railroad Company ("Union Pacific") breached its duties under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, by negligently causing him to be injured in a locomotive accident, and then violated the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109, by retaliating against him for filing injury and hazardous condition reports based on the incident. Before the Court is Union Pacific's motion for partial summary judgment on Stapleton's FRSA claim. (Dkt. No. 36.) For the reasons discussed below, the Court grants Union Pacific's motion, leaving Stapleton to move forward with only his FELA claim.

## BACKGROUND

Stapleton asserts two claims against Union Pacific in this case. In Count I of his Complaint, Stapleton alleges that Union Pacific was negligent and breached its duty under FELA by failing to provide him with a reasonably safe place to work, resulting in the crash in which he was injured. In Count II, he claims that Union Pacific violated the FRSA by refusing to allow him to return to work in retaliation for his reporting of his injury and the hazardous safety condition that contributed to it. Unless otherwise noted, the following facts are undisputed.

Stapleton worked for Union Pacific as an engineer. (Def.'s Stmt. of Material and Undisputed Facts ("Def.'s SOF") ¶ 2, Dkt. No. 37.) He claims that, on or about January 19, 2015, he was injured in a locomotive crash while working for Union Pacific, resulting in injuries that continue to cause him "pain, suffering, inconvenience, anguish, and disability." (Compl. ¶¶ 4, 7–8, Dkt. No. 1.) Following the accident, Stapleton filed a personal injury report with Union Pacific on January 31, 2015, which was followed by a release to return to work in February 2015. (Def.'s SOF ¶¶ 18, 21, Dkt. No. 37.) Thereafter, Dr. John Charbonneau, Union Pacific's Associate Medical Director, reviewed Stapleton's medical records and found that he was clear to work in relation to the injury that occurred in January; however, Dr. Charbonneau further noted that Stapleton had a history of seizures and was taking the prescription drug Lamictal, and thus he concluded that Stapleton should receive a Fitness-for-Duty ("FFD") evaluation. (*Id.* ¶ 22.)

Four years earlier, in 2011, Union Pacific had amended its medical rules to add a list of reportable health events that when disclosed would trigger an FFD evaluation on a case-by-case basis. (*Id.* ¶¶ 8, 13.) An FFD evaluation concerns "the medical and functional ability to: Safely perform a job, with or without reasonable accommodations, and meet medical standards established by regulatory agencies in accordance with federal and state laws." (*Id.* ¶ 6.) Included in Union Pacific's post-2011 list of reportable health events is a section on seizures or loss of consciousness, which includes the following: "1. A seizure of any kind. 2. Diagnosis of epilepsy (a condition with risk for recurrent seizures). 3. Treatment with anti-seizure medication to prevent seizures. 4. Loss of consciousness (of any duration including episode caused by insulin reaction)." (*Id.* ¶ 9.)

After reviewing Stapleton's medical records, Dr. John Holland, Union Pacific's Chief Medical Officer, determined that Stapleton "should be considered as having a permanent

unacceptably high risk for future seizures (greater than 1% annual recurrence rate), and this risk cannot be reduced to an acceptable level with AEDs," and that it was not safe for Stapleton to operate a locomotive. (*Id.* ¶¶ 28–29.) Dr. Holland also recommended that Stapleton's records be reviewed by neurologist Dr. Reed Wilson, who subsequently determined that Stapleton "had a single convulsive seizure in 2006 in addition to several episodes of complex partial seizures." (*Id.* ¶¶ 30–31.) Although Stapleton's EEG was normal, a brain MRI showed multiple abnormalities. (*Id.* ¶ 32). Therefore, Dr. Wilson found that guidance from the Federal Motor Carrier Safety Administration applied to Stapleton because he worked in a safety sensitive position despite not operating a commercial motor vehicle. (*Id.* ¶ 36).

Following the review of his relevant medical history by Union Pacific's doctors, Stapleton was placed on the following work restrictions: "1. Not to operate company vehicles, on-track or mobile equipment, or fork-lifts. 2. Not to work on or near moving trains, freight cars or locomotives, unless protected by barriers. 3. Not to operate cranes, hoists, or machinery, if these activities might create a risk of harm to others or a risk of catastrophic injury to the employee. 4. Not to work at unprotected heights, over 4 fee above the ground. 5. Not to do work where decisions or actions can affect the safety of others, or have a significant impact on business operations. 6. These work restrictions are permanent." (*Id.* ¶ 37.) Dr. Holland subsequently discussed the restrictions with Stapleton's own neurologist, Dr. Manoj Raghavan, who diagnosed Stapleton with epilepsy and did not object to imposition of the restrictions. (*Id.* ¶¶ 26, 38.)

## DISCUSSION

Under Federal Rule of Civil Procedure 56, "a party may move for summary judgment, identifying each claim or defense—or part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. While inferences drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," those inferences must be supported by more than just "speculation or conjecture." *Matsushita Elec. Indus. Co., Ltd. v. Zenish Radio Corp*, 475 U.S. 574, 587 (1986); *see also Herzog v. Graphic Packaging Intern., Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (citing *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008)). Meanwhile, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587.

Union Pacific now moves for summary judgment on Stapleton's FRSA claim only. The FRSA prohibits railroad carriers engaged in interstate or foreign commerce from retaliating against employees who report, among other things, work-related injuries and hazardous safety conditions. *See* 49 U.S.C. § 20109. Incorporating by reference the rules and procedures of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, the FRSA requires an employee asserting a retaliation claim to show by a preponderance of the evidence that "(1) she engaged in protected activity; (2) the employer knew that she engaged in protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013); *see also Burton v. Ill. Cent. R.R. Co.*, 2016 WL 302109, at *6 (N.D. Ill. 2016). If the employee can show that the protected activity was a contributing factor to the adverse action taken against her, the burden shifts to the employer to show "by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that behavior." *Burton*, 2016 WL 302109, at *6.

Consistent with Congress's intent with the FRSA to protect plaintiff-employees, the contributing factor test was created to overrule case law requiring whistleblowers to prove that their conduct was a "significant, motivating, substantial, or predominant factor" in the subsequent unfavorable action. *Id.* at 158, 160. A contributing factor is "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision." *Id.* at 158. A plaintiff may establish the required link between protected activity and an unfavorable personnel action through evidence such as "temporal proximity, indications of pretext, inconsistent application of an employer's policies, an employer's shifting explanations for its actions, antagonism or hostility toward a complainant's protected activity, the falsity of an employer's explanation for the adverse action taken, and a change in the employer's attitude toward the complainant after he or she engages in protected activity." *Cyrus v. Union Pac. R.R. Co.*, 2015 WL 5675073, at *11 (N.D. Ill. 2015) (citing *Ray v. Union Pac. R.R. Co.*, 971 F. Supp. 2d 869, 885 (D. Iowa 2013)).

Union Pacific raises three arguments in support of its motion for summary judgment on Stapleton's FRSA claim: first, it contends that Stapleton cannot establish a *prima facie* case under the FRSA because his injury and hazardous safety reports, although protected, were not contributing factors to Union Pacific's decision to keep him from returning to work; second, it argues that, even if Stapleton could establish a *prima facie* case under the FRSA, Union Pacific would have taken the same action regardless of Stapleton's reports and therefore cannot be held liable under the retaliation provision; and third, Union Pacific contends that the restrictions placed on Stapleton fall under the FRSA's "safe harbor" provision that exempts railroads from retaliation claims when decisions are made pursuant to FFD standards. Because the Court finds that Union Pacific's action toward Stapleton was indeed covered by the plain language of the safe harbor

provision, the Court grants summary judgment without reaching the other two arguments.

The FRSA provides that,

> [a] railroad carrier or person covered under this section may not discipline, or threaten discipline to, an employee for requesting medical or first aid treatment, or for following orders or a treatment plan of a treating physician, *except that a railroad carrier's refusal to permit an employee to return to work following medical treatment shall not be considered a violation of this section if the refusal is pursuant to Federal Railroad Administration medical standards for fitness of duty or, if there are no pertinent Federal Railroad Administration standards, a carrier's medical standards for fitness for duty.*

49 U.S.C. § 20109 (emphasis added). Stapleton's FRSA retaliation claim is premised on his inability to return to work. The parties have identified no Federal Railroad Administration medical standards applicable to Stapleton's situation; thus, Union Pacific's medical rules govern. Given the changes made to Union Pacific's medical rules in 2011, Dr. Charbonneau's decision to commence an FFD evaluation after noting Stapleton's 2006 seizure was in line with the reportable health events found in Appendix B of the rules. (Def.'s SOF ¶¶ 8, 13, Dkt. No. 37.) As the Seventh Circuit has explained, "summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (citing *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). Yet Stapleton has put forward no evidence that the medical restrictions imposed on him were not, in fact, in line with Union Pacific's FFD standards.

The FRSA "does not punish railroads for disciplining employees unless the discipline is retaliatory. . . . An injury report is a normal trigger for an investigation designed to uncover facts that can prompt corrective action that will reduce the likelihood of a future injury." *Koziara v. BNSF Railway Co.*, 840 F.3d 873, 878 (7th Cir. 2016). As the undisputed record demonstrates that Union Pacific's actions fall under the plain language of the FRSA's safe harbor provision, the

railroad's motion for partial summary judgment is granted.

## CONCLUSION

For the foregoing reasons, Union Pacific's motion for partial summary judgment is GRANTED.

Dated: February 1, 2018

_____
Andrea R. Wood
United States District Judge